**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

Docket Number(s): 25-1424

Caption [use short title]

Motion for: Stay Pending Appeal of Preliminary
Injunction and Immediate Stay During the
Consideration of This Motion

State of New York et al. v. United States
Department of Education et al.

Set forth below precise, complete statement of relief sought:

The government requests an immediate
administrative stay of the district court's June 3
Preliminary Injunction pending resolution of the
government's motion for a stay, as well as a stay
pending final disposition of this appeal.

MOVING PARTY: Defendants/Appellants

OPPOSING PARTY: Plaintiffs/Appellees

☐ Plaintiff  ☑ Defendant

☑ Appellant/Petitioner  ☐ Appellee/Respondent

MOVING ATTORNEY: Dana Walsh Kumar

OPPOSING ATTORNEY: Stephen Yanni

[name of attorney, with firm, address, phone number and e-mail]

U.S. Attorney's Office, SDNY

Office of the New York State Attorney General

86 Chambers Street, Floor 3, New York, NY 10007

28 Liberty Street New York, NY 10005

212-637-2741; dana.walsh.kumar@usdoj.gov

212-416-6184; stephen.yanni@ag.ny.gov

Court- Judge/ Agency appealed from: Southern District of New York / Edgardo Ramos

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes  ☐ No (explain): _____

Opposing counsel's position on motion:
☐ Unopposed  ☑ Opposed  ☐ Don't Know
Does opposing counsel intend to file a response:
☑ Yes  ☐ No  ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?  ☑ Yes  ☐ No
Has this relief been previously sought in this court?  ☐ Yes  ☑ No

Requested return date and explanation of emergency: _____
We request a return date of Tuesday, June 10.  The reason for the emergency is that
if the injunction stands, the government will be irreparably harmed because
it would result in millions of dollars of payments that should not be made and which
the Department of Education would be unable to recover.

Is the oral argument on motion requested?  ☐ Yes  ☑ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?  ☐ Yes  ☑ No  If yes, enter date: _____

**Signature of Moving Attorney:**

DANA KUMAR  Digitally signed by DANA KUMAR Date: 2025.06.06 19:16:12 -04'00'  Date: 6/6/2025

Service : ☑ Electronic  ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | |
|---|---|
| State of New York et al.,<br><br>               Plaintiffs-Appellees,<br><br>      v.<br><br>United States Department of Education et al.,<br><br>               Defendants-Appellants. | Docket No. 25-1424 |

## Defendants-Appellants' Emergency Motion for a Stay Pending Appeal and for an Immediate Stay During the Consideration of This Motion

## Introduction

By this emergency application, the government requests an immediate administrative stay pending resolution of the government's motion for a stay, as well as a stay pending final disposition of this appeal.

This is a suit brought by sixteen states and the District of Columbia against the United States Department of Education (the "Department" or "ED") and Education Secretary Linda McMahon regarding a recent Department decision concerning funding provided in COVID-19 relief statutes. That funding, which amounted to hundreds of billions of dollars, had to be obligated and liquidated by January 2025, but the

Department has discretion to extend that deadline upon a request by a state "when justified." 2 C.F.R. § 200.344(c). Although extensions had previously been granted, on March 28, 2025, the Department rescinded those extensions and implemented a new process by which states could seek additional extensions. And on May 11, 2025, the Department issued a letter explaining in more detail the reasons for rescinding the previously granted extensions and informed the states that the existing liquidation extension would expire on May 25, 2025. Plaintiffs, seeking immediate payment, sought a preliminary injunction, which the district court granted.

An immediate stay should be entered for the following reasons.

First, the district court lacks jurisdiction over the claims in this case, which fall within the Tucker Act and must therefore be brought in the Court of Federal Claims. Although plaintiffs style their claims as seeking relief under the Administrative Procedure Act ("APA"), they actually seek payments from the federal government pursuant to grant agreements. As the Supreme Court recently held in a similar case, the APA's waiver of sovereign immunity does not extend to orders to enforce a contractual obligation to pay money. *Department of Education v.*

*California*, 145 S. Ct. 966, 968 (2025). The district court thus lacks jurisdiction over these claims.

Second, the district court improperly enjoined the Department from exercising legitimate discretion over approval of liquidation extension requests. The Department's explanation in its May 11 Letter for rescinding previously granted liquidation extensions is reasonable and afforded the plaintiffs ample notice. The Department is thus likely to succeed on the merits of its claim that its actions were lawful.

Third, a stay will not harm plaintiffs because the funds will still be available at the conclusion of the litigation and plaintiffs can request funds for specific projects in the meantime. Allowing the injunction to stand, however, will irreparably harm the government because it would result in potentially millions of dollars of payments that should not be made and which the Department would be unable to recover.

Accordingly, this Court should stay the district court's injunction, immediately during the consideration of this motion, and until final resolution of the appeal.

## Statement

### A. Statutory and Regulatory Background

In the midst of the COVID-19 pandemic and ensuing public health emergency, Congress enacted several statutes that appropriated funds to respond to the crisis. Three of those statutes were the Coronavirus Aid, Relief, and Economic Security Act ("CARES"), Pub. L. No. 116-136 (2020), 134 Stat. 281, the Coronavirus Response and Relief Supplemental Appropriations Act, 2021 ("CRRSA"), Pub. L. No. 116-260 (2020), 134 Stat. 1182, and the American Rescue Plan of 2021 ("ARP"), Pub. L. No. 117-2, 135 Stat. 4 (2021). These statutes provided funding to support schools and students experiencing challenges stemming from the pandemic, to support the "safe return to in-person instruction," and to account for "learning loss" from the pandemic. *E.g.*, Pub. L. 117-2, 135 Stat. 4 (2021). Together, these statutes established the Education Stabilization Fund ("ESF"), composed of "relief funds that support State and institutional efforts to prevent, prepare for, and respond to the coronavirus impacts" on students. U.S. Department of Education, Education Stabilization Fund, https://covid-relief-data.ed.gov/.

Three ESF programs are relevant here: the Elementary and Secondary School Emergency Relief ("ESSER") program; the Homeless

4

Children and Youth ("HCY") program; and the Emergency Assistance to Non-Public Schools ("EANS") program. *See* https://www.congress.gov/crs-product/R48186. The Department, through its Office of Elementary and Secondary Education ("OESE"), disburses these funds to state educational agencies ("SEAs") to provide local education agencies ("LEAs") with the emergency relief. *See* 34 C.F.R. Part 76.

Under ARP § 2001(a), approximately $122 billion was to remain available to SEAs and LEAs through September 30, 2023. This means that SEAs had until September 30, 2023, to obligate any funds pursuant to the statutes. Under the General Education Provisions Act ("GEPA"), however, the authorization of appropriations was "automatically extended for one additional fiscal year," 20 U.S.C. § 1226a(a); thus, recipients of the ESSER, HCY, and EANS funds appropriated through the ARP had until September 30, 2024, to obligate those funds.

Although SEAs were required to obligate funds by that date, they were not required to liquidate or draw down funds for all projects by then; under applicable regulations, funding recipients have 120 calendar days "after the conclusion of the period of performance" to liquidate all financial obligations incurred. 2 C.F.R. § 200.344(c). States were

5

therefore required to incur obligations eligible for funding by September 30, 2024, and had until January 28, 2025, to liquidate the obligated ARP funds.

The Department, "[w]hen justified," "may approve extensions for the recipient or subrecipient" of grant funds. 2 C.F.R. § 200.344(c). In January 2024, the Department issued guidance stating that "upon request," a grantee might be "approved for up to an additional 14 months beyond" the end of the 120-day liquidation period, "provided a timely and valid obligation had been made." https://www.ed.gov/sites/ed/files/2024/01/Updated-Technical-FAQs-for-Liquidation-Extensions-1.9.24-v-2-for-posting.pdf. According to the complaint, before March 28, 2025, plaintiffs received extensions to liquidate EANS, ESSER, and/or HCY funds, which, in most instances relevant here, extended the applicable liquidation period to March 28, 2026. Compl. ¶¶ 87-157. Plaintiffs allege they "were relying on the extension approvals permitting Plaintiffs to draw upon the ES funding through the expiration of the extended liquidation periods in executing agreed-upon plans to deliver services to students and engage in building projects aimed at combating the long-term effects of the pandemic." *Id.* ¶ 158.

## B.  Factual Background and Proceedings Below

### 1.  The Department's March 28 and April 3 Letters

On March 28, 2025, Secretary McMahon issued a letter to all state recipients of ES funding, including plaintiffs, advising them that the Department had modified the period to liquidate all obligations under the ESF, to end on March 28, 2025, rather than the previously extended deadline of March 28, 2026.  March 28 Ltr. (ECF No. 1-1).[1]  The letter explained that states "were entitled to the full award only if [they] liquidated all financial obligations within 120 days of the end of the period of performance," and that the "period to liquidate obligations for these Grant Awards [had] expired."  *Id.*  Secretary McMahon noted that, because the pandemic had ended, extending deadlines for COVID-related grants "is not consistent with the Department's priorities and thus not a worthwhile exercise of its discretion."  *Id.*  But the letter also stated that "even though the COVID pandemic and the liquidation period under the applicable regulations [had] ended, the Department will consider an extension to [a state's] liquidation period on an individual project-specific basis."  *Id.*  To obtain an extension, the recipient was

---

[1]  All references to ECF are to the district court docket.

required to submit a statement "explaining (1) how a particular project's extension is necessary to mitigate the effects of COVID on American students' education, and (2) why the Department should exercise its discretion to grant [the] request." *Id.*

On April 3, 2025, Hayley Sanon, the Principal Deputy Assistant Secretary and Acting Assistant Secretary in OESE, issued a "Dear Colleague Letter," also stating that "even though the COVID pandemic and the liquidation period under the applicable regulations [had] ended, the Department will consider an extension to [a state's] liquidation period on an individual project-specific basis." https://www.ed.gov/media/ document/dear-colleague-letter-follow-esf-funding-april-3-2025- 109779.pdf. The April 3 Letter identified information states needed to submit to apply for project-specific extensions. *Id.* The Department has since indicated that a state whose project-specific request is denied may administratively appeal within 30 days. https://www.ed.gov/ grants-and-programs/formula-grants/response-formula-grants/covid-19- emergency-relief-grants/education-stabilization-fund-liquidation- extensions. As of June 5, 2025, 34 states and outlying areas have submitted over 340 project-specific extension requests, and the

8

Department had reviewed and issued determinations for 257 project-specific requests. *Id.* Non-plaintiff states continue to make requests through this process and the Department is adjudicating those requests. Declaration of Ruth E. Ryder, dated May 29, 2025, ECF No. 101 ("Ryder Decl.") ¶ 10.

### 2. Plaintiffs' First Motion for a Preliminary Injunction and the District Court's May 6 Order

Plaintiffs commenced this action on April 10, 2025, challenging the March 28 Letter's rescission of the prior extensions. Plaintiffs alleged they received ES funding grants and also received extensions of the liquidation deadline in connection with those grants. Compl. ¶¶ 47-157. They further alleged that rescission of those extensions harmed state and local programs designed to address the impact of the pandemic. *Id.* ¶¶ 162-91.

Plaintiffs moved for a preliminary injunction. On May 6, 2025, the district court entered plaintiffs' proposed order, preliminarily enjoining the Department from "enforcing or implementing as against Plaintiffs during the pendency of this litigation or until further order of the Court the directives in the March 28, 2025 letter" which rescinded the prior liquidation deadline extensions. ECF No. 77 (the "May 6 Order") ¶ 1.

9

The May 6 Order also enjoined the Department from "modifying ED's previously-approved periods for Plaintiffs to liquidate their obligations under the ESF without providing notice to Plaintiffs at least fourteen (14) days prior to the effective date of such modification." *Id.* ¶ 2.

### 3. The May 11 Letter and Plaintiffs' Second Motion for a Preliminary Injunction

The Department complied with the May 6 Order and has continued to process reimbursement requests submitted by plaintiffs (and by non-plaintiff states on a project-specific basis). Ryder Decl. ¶¶ 9-10.

On May 11, 2025, the Department issued a new "Dear Colleague Letter" to plaintiffs, informing them of the Department's decision to modify the period to liquidate obligations under the ESF program to terminate on May 25, 2025, as permitted by paragraph 2 of the May 6 Order. ECF No. 84-1 ("May 11 Ltr."). The May 11 Letter stated that the amount of federal funds available under the ESF programs was significantly larger than any prior ED grant program, and that the Department's prior extension of the relevant liquidation deadlines was "unprecedented," as "the Department had never previously offered such a broad-based opportunity to all States to liquidate funds in a grant program for years after the original obligation period set by Congress."

10

May 11 Ltr. 2.

Accordingly, the May 11 Letter explained that the Department is "exercising its discretion [to terminate the prior extensions] under 2 CFR § 200.344(c)." *Id.* The letter indicated that, "[i]n the time since the pandemic ended, States have increasingly tapped ESF funds in ways that are less and less connected to direct academic services to students and the ongoing educational harms caused by COVID." *Id.* It explained that the Department has "revisited [its] threadbare determination" that prior extensions (which were "more than three times the length of the default period") were warranted and "now concludes that the continued use of federal funds for COVID-related harms more than two years after the pandemic ended is unwarranted." *Id.* 3.

The Department thus concluded that "[t]he most effective way to allay" its concerns regarding the propriety of prior extensions "is to run a new, individualized process that considers the unique circumstances of each grantee in light of their past performance, their intended use of the funds, and the lengthy period they have already enjoyed for liquidating the funds." *Id.* The letter points to grantees' "rapid[]" draw-down of funds after having received extension requests, which "justifies a more

11

individualized review process to determine how funds are being used and whether an extension is appropriate." *Id.*

In light of the Department's discretion in extending liquidation periods, and because states "have already enjoyed nearly twice" the time provided by regulation "to liquidate their funds," the May 11 Letter stated that "no valid reliance interests exist" in the prior extensions. *Id.* 4. Nevertheless, the letter explained that the Department had "properly accounted" for reliance interests by providing plaintiffs with 14 days to liquidate already-incurred expenses, and provided instructions for seeking project-specific extensions of the liquidation deadline. *Id.* 4-6.

In response, on May 14, 2025, plaintiffs moved for an *ex parte* temporary restraining order ("TRO") and preliminary injunction enjoining the Department from implementing the May 11 Letter and directing the Department to "process Plaintiff's pending payment requests without delay." ECF No. 85 ("Pls.' Br.") at 18. The district court temporarily restrained the Department from "enforcing or implementing as against Plaintiffs the directives in the May 11 Rescission Letter" pending a decision on the preliminary injunction. ECF No. 95 at 2.

### 4. The June 3 Hearing and Preliminary Injunction Order

On June 3, 2025, the district court held a hearing on plaintiffs' motion. It concluded that despite plaintiffs' concession that they seek to require the Department to "process the payment requests without delay," June 3, 2025 Tr. 10, using a merely "ministerial" review process that "just check[s] to make sure the receipts . . . matched up" with approved awards, May 6, 2025 Tr. 7, and therefore would require payment, the Tucker Act was not applicable to plaintiffs' claims and the district court had jurisdiction over the claims. The district court determined that "plaintiffs are not seeking payments pursuant to any type of a contract," and that because "the rights and remedies are statutorily or constitutionally based rather than contractually based, the Tucker Act does not apply." June 3 Tr. 13.

The district court then decided to "abide by [its] initial finding" that plaintiffs have established a likelihood of success on the merits, "both because the Department of Education's determination to rescind the deadlines and apply the new approval process is arbitrary and capricious and because it is contrary to law." *Id.* 23. The court determined "plaintiffs will be irreparably harmed in the absence of preliminary relief

13

because of the cessation of programs that are already in place, infrastructure projects that are already in place, employment determinations that have been made," and "that the balance of equities tip in favor of the plaintiffs" and an injunction is in the public interest. *Id.* 23-24.

The court denied the Department's request to stay the preliminary injunction order pending any appeal, *id.* 32, and entered an order enjoining the Department from "enforcing or implementing as against Plaintiffs during the pendency of [the] litigation" the March 28 or May 11 letters. ECF No. 106 ("June 3 Order"), ¶¶ 1-2. The district court also enjoined the Department from "attempting to modify ED's previously approved periods for Plaintiffs to liquidate their obligations under the ESF without providing notice to Plaintiffs at least thirty (30) days prior to the effective date of such modification" and directed the Department to "process Plaintiffs' outstanding and future requests for liquidation of ESF without delay." *Id.* ¶¶ 3-4.

## ARGUMENT

An immediate administrative stay should be entered pending resolution of this motion. The district court's order may require the

14

Department to immediately expend millions of dollars that it will be unable to recover even if it prevails in the litigation; conversely, if the order is stayed, plaintiffs will not be harmed as they may seek the requested funds if their challenge is successful.   An immediate stay will thus allow the Court time to consider the Department's motion while preserving the status quo.   This Court has entered such immediate administrative stay orders in past cases.   *E.g.*, *Hedges v. Obama*, No. 12-3176, dkt. entry 39 (2d Cir. Sept. 17, 2012).

A full stay pending appeal is also warranted.   A preliminary injunction is "an extraordinary and drastic remedy," *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (quotation marks omitted), whose function is "to preserve the relative positions of the parties" pending the litigation's conclusion, *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quotation marks omitted).   Such extraordinary relief should be no broader than necessary to accomplish this purpose.   *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 765 (1994).   In considering a stay pending appeal, this Court considers "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance

15

of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (footnote and quotation marks omitted). Each factor favors staying the district court's order.

## A. The Government Is Likely to Prevail on the Merits

### 1. The District Court Lacks Jurisdiction

The district court lacks jurisdiction over plaintiffs' claims for payment of money pursuant to the grants, which can only be brought in the Court of Federal Claims. Plaintiffs seek court-ordered payment of federal funds under previously approved grant agreements. Plaintiffs are thus not just objecting to the Department's rescission of liquidation extensions; they seek an order compelling payments and enjoining withholding of funds.

The district court lacks jurisdiction over such claims. To sue a federal agency, a plaintiff must show that its claim falls within the scope of an unequivocally expressed statutory waiver of sovereign immunity. *FAA v. Cooper*, 566 U.S. 284, 290 (2012). The APA's waiver of sovereign immunity applies only to claims against the United States seeking non-

16

monetary relief, and does not apply if any other statute waives sovereign immunity over the suit or impliedly forbids the relief sought. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012); *California*, 145 S. Ct. at 968.

Where a party claims the government is obligated to pay funds under a contract or grant, the proper remedy is suit under the Tucker Act, not the APA. The Tucker Act provides exclusive jurisdiction over such claims to the Court of Federal Claims. 28 U.S.C. § 1491(a); *Presidential Gardens Assocs. v. HUD*, 175 F.3d 132, 143 (2d Cir. 1999). This prohibition extends to claims founded on grants, like those at issue here, that are implemented through "contracts to set the terms of and receive commitments from recipients." *Boaz Housing Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021).

Determining whether a particular action is "at its essence a contract action" depends both on the source of the plaintiff's claimed rights and the relief sought. *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 375 (2d Cir. 1999) (quotation marks omitted). Where, as here, a plaintiff seeks to enforce a contractual agreement to obtain payment of money, the inquiry is straightforward. Accordingly, the Supreme Court

17

recently stayed an order involving Department grants, concluding the government was likely to succeed in showing the Tucker Act applies and the district court "lacked jurisdiction to order the payment of money under the APA." *California*, 145 S. Ct. at 968.

That same reasoning applies here. The funds at issue here were appropriated by Congress and awarded through grant programs. By plaintiffs' own characterization, these are funds "the states understand they were already entitled to under the grants." May 6 Tr. 6; *accord* Pl. Br. 2 (SEAs "submitted grant applications . . . resulting in awards to Plaintiffs totaling over $50 billion."). Even in plaintiffs' view, the funding was distributed through grants; plaintiffs seek court intervention to require disbursement of those funds. Such claims must be brought in the Court of Federal Claims. *E.g.*, *Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021) (treating federal grant agreements as contracts); *San Juan City Coll. v. United States*, 391 F.3d 1357, 1360-62 (Fed Cir. 2004) (same); *Pennsylvania Dep't of Pub. Welfare v. United States*, 48 Fed. Cl. 785, 790 (2001) (same).

The district court, however, without addressing *California* at all, simply concluded that the Tucker Act did not apply because the

18

"plaintiffs are not seeking payments pursuant to any type of contract." June 3 Tr. 10. But while plaintiffs style their claims as seeking to enjoin the Department from implementing a new policy, what they are really seeking is payment. They wish to require the Department to review reimbursement requests subject only to a "ministerial, minimal review," so states "receiv[e] payment within the next business day." May 6 Tr. 10; *see id.* 6-7 (plaintiffs describing pre-2025 process as "automated" and resulting in one-day payment after "cursory" review). Plaintiffs describe the Department's conduct as trying "to block Plaintiffs' access to their ES funds." Pls. Br. 18. What plaintiffs are asserting is that the Department is withholding funds plaintiffs are entitled to under the grant agreement, which amounts to a contract claim. Allowing plaintiffs to ignore the Tucker Act by claiming they are seeking only to enjoin the Department to revert back to its pre-March 28 procedures, which in their view amounted to payment, would let them avoid Tucker Act jurisdiction through artful pleading. *See Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 79 (D.C. Cir. 1985).

The district court likened this case to *Bowen v. Massachusetts*, 487 U.S. 879 (1988). June 3 Tr. 10. But "*Bowen* has no bearing on the

unavailability of an injunction to enforce a contractual obligation to pay money past due." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002). *Bowen* was an action seeking specific relief to enforce a mandate of the Medicaid Act, "not an action for breach of contract," *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 5 (1st Cir. 1989), and courts "have consistently read *Bowen* to reinforce the jurisdictional role of the Court of Federal Claims in resolving contract disputes outside the complex Medicaid arena," *Brighton Village Associates v. United States*, 52 F.3d 1056, 1059 n.3 (Fed. Cir. 1995); *see Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *2 (4th Cir. June 5, 2025) (distinguishing *Bowen* and granting stay). For those reasons, the Supreme Court distinguished *Bowen* in *California*, a case more directly on point to this one. 145 S. Ct. at 968.

## 2. The Government Is Likely to Succeed in Showing the Department's May 11 Letter was Reasonable

The May 11 Letter (like the March 28 and April 3 letters) does not constitute "final agency action," and is thus not subject to APA review. 5 U.S.C. § 704; *accord Dalton v. Specter,* 511 U.S. 462, 469 (1994). This finality requirement seeks to avoid "piecemeal review" that is "inefficient" and might later prove to have been unnecessary. *FTC v.*

20

*Standard Oil Co.*, 449 U.S. 232, 242 (1980). Agency action is final only when it "mark[s] the consummation of the agency's decisionmaking process" and is "one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (quotation marks omitted).

The May 11 Letter's "determination is merely that the extreme, broad-based liquidation extensions previously granted are inappropriate." May 11 Ltr. 3. But it recognizes that ESF funds may still serve their intended function, and accordingly outlines the process for seeking project-specific extensions. *Id.* 5-6. Thus, the letter does not determine whether any particular project's liquidation deadline may be extended. Indeed, the Department has granted, and continues to grant, project-specific extensions for non-plaintiff states, and denials of those requests may be administratively appealed. Ryder Decl. ¶ 10. Given that process, and the "flexible" and "pragmatic" nature of the finality inquiry, *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149-50 (1967), the letter does not amount to final agency action.

The district court appears to have disagreed, having previously

21

found a "decision was made to rescind all extensions," "[t]here was no equivocation in that determination, and it is operable," and "presumably if [states] were to put in a request for reimbursement today, outside of the new process that has been set up for these funds, it would be rejected out of hand."  May 6 Tr. 44.  But that ignores the specific requests for funding allowed by the May 11 letter.  Plaintiffs may still request a liquidation extension for a specific project, and if granted, draw down those funds; if not granted, a state could appeal that decision, and only then would the action be considered final.

Even if the May 11 Letter does constitute reviewable final agency action, however, the Department's actions are not "arbitrary and capricious."  5 U.S.C. § 706(2)(A).  Judicial review under the APA is "deferential," and "a court may not substitute its own policy judgment for that of the agency."  *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).  "A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision."  *Id.*

The May 11 Letter survives APA review.  The Department has authority to grant extensions where it determines they are "justified."

22

2 C.F.R. § 200.344(c); *see also* May 11 Ltr. 3. The May 11 Letter adequately explains why, in its exercise of that discretion and subject to a 14-day notice period, it determined to rescind the prior extensions. *See FDA v. Wages & White Lion Investments*, 145 S. Ct. 898, 917 (2025) ("agencies are free to change their existing policies as long as they provide a reasoned explanation for the change, display awareness that they are changing position, and consider serious reliance interests" (quotation marks and alterations omitted)).

Contrary to plaintiffs' previous arguments, the May 11 Letter does not justify the Department's change in position merely on the basis that the pandemic has ended. *Contra* Pls.' Br. 10. Rather, the letter explains that the relevant appropriations statutes "generally require ESF funds to be used to prepare, prevent, and respond to coronavirus," but that "[i]n the time since the pandemic ended, States have increasingly tapped ESF funds in ways that are less and less connected to direct academic services to students and the ongoing educational harms caused by COVID." May 11 Ltr. 3 (quotation marks omitted). Project-specific consideration is therefore meant to ensure that ongoing projects are consistent with the objectives of the appropriations statutes.

That certain projects identified by the May 11 Letter might arguably be permitted under those statutes, *see* Pls.' Br. 10-11, does not render case-by-case review of requests for extensions of the liquidation period arbitrary and capricious.

The Department also adequately explained its basis for taking a second look at prior extension approvals. *Contra* Pls.' Br. 13-14. In the May 11 Letter, the Department explains that "the original extension letters included no explanation for the extensions, and the Department has serious questions about the verification process that resulted in the approval of effectively blanket extensions." May 11 Ltr. 3. And the letter explains that "the Department had never previously offered such a broad-based opportunity to all States to liquidate funds in a grant program for years after the original obligation period set by Congress," May 11 Ltr. 2, and notes that the extension for the ARP Act "was more than three times the length of the default period," *id.* 3.

The Department also reasonably grounded the exercise of its discretion in the recent pace of states' draw-down requests. *See* Ryder Decl. ¶¶ 3-6 & Ex. A. Nor does the May 11 Letter ignore reliance interests, which the May 11 Letter addressed by providing both a "14-day

24

period . . . to seek reimbursement for authorized costs" and a process for seeking individualized extensions. May 11 Ltr. 4-6. Effectively, under plaintiffs' view of their reliance interests, the Department would never be able to modify prior extensions of the liquidation period. That is inconsistent with the discretion provided to the Department by regulation.

Lastly, plaintiffs have not established a likelihood of success on their claim that the May 11 Letter is contrary to law. The relevant statutes provided a deadline for obligation of these appropriations: September 30, 2024. ARP § 2001(a); 20 U.S.C. § 1226a. The applicable regulation provided an additional 120 days to liquidate all financial obligations and gave the Department discretion to extend that deadline "[w]hen justified." 2 C.F.R. § 200.344(c). The May 11 Letter continues to permit states to seek further extensions on a project-specific basis. May 11 Ltr. 5-6. There is nothing in the statutes that precludes the Department from rescinding a prior extension and evaluating further extension requests on a project-specific basis.

The district court reasoned that the purpose "of the acts that provided the funding was so that there can be funding for these programs

going forward" after the pandemic ended "to account for the loss of educational attainment that schoolchildren had suffered as a result of remote learning and other difficulties attendant to the COVID-19 pandemic." May 6 Tr. 45. The district court thus concluded that "Congress intended that these funds remain available" and the Department must "be liberal and flexible in making sure that these programs continued to be funded" and "not impose unreasonable obstacles in the way of state agencies looking to continue to fund those programs." *Id*. But that is incorrect. Nothing in the statutory text supports that reading. And pursuant to 2 C.F.R. § 200.344(c), it is the Department that has discretion to determine whether a liquidation extension is "justified" after the statutorily mandated time has elapsed. The district court incorrectly ignored the Department's role to use discretion to determine when liquidation extensions are "justified."

### 3. The Balance of Equities Warrants a Stay

The equitable factors weigh decisively in the Department's favor. A stay is warranted because the district court's injunction will cause millions of dollars to flow from the public fisc. As in *California*, the government will be "unlikely to recover the grant funds once they are

26

disbursed." 145 S. Ct. at 969. No state has "promised to return withdrawn funds" if the Department prevails in the litigation. *Id.* If the preliminary injunction is stayed, the Department will continue to process requests for payment submitted up through May 25, 2025, pursuant to the pre-March 28 process.

But the pre-March 28 system of processing requests, as ordered by the district court and as described by plaintiff, amounts to the Department ministerially disbursing funds in response to liquidation requests from plaintiffs. And since May 6, plaintiffs have been drawing down huge sums at higher rates than before the district court entered the first preliminary injunction order. Ryder Decl. ¶¶ 4-6. If required to proceed in this manner, the Department will be left with no meaningful recourse if it prevails. Accordingly, the government requests a stay pending appeal, as well as an administrative stay until the Court can resolve this motion.

A stay will not harm plaintiffs. The Department will retain the money relating to requests submitted after May 25, 2025, and plaintiffs can proceed with project-specific extension requests; or if plaintiffs prevail in their challenge, they may receive money to use for the

requested projects. Moreover, the gravamen of plaintiffs' complaint is monetary, which is quintessentially reparable. *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991). If plaintiffs prevail, their requests for liquidation extension requests will be processed under the pre-March 28 procedure and the funds would therefore be disbursed to the extent required by law.

## CONCLUSION

The Court should stay the district court's preliminary injunction entered on June 3, 2025, pending final resolution of the government's appeal, and should grant an immediate administrative stay pending its consideration of this motion.

Dated:  New York, New York        Respectfully submitted,
        June 6, 2025

                                  JAY CLAYTON
                                  United States Attorney for the
                                  Southern District of New York
                                  *Attorney for Defendants-Appellants.*

                          By:   /s/ *Dana Walsh Kumar*
                                  DANA WALSH KUMAR
                                  CHARLES S. JACOB
                                  BENJAMIN H. TORRANCE
                                  Assistant United States Attorneys
                                  86 Chambers Street, Third Floor
                                  New York, NY 10007
                                  Telephone: (212) 637-2741; 2725
                                  Email: dana.walsh.kumar@usdoj.gov
                                          charles.jacob@usdoj.gov


### Certificate of Compliance

Pursuant to Federal Rule of Appellate Procedure 32(g), the above-named counsel hereby certifies that this memorandum complies with the type-volume limitation of the Federal Rules of Appellate Procedure. As measured by the word processing system used to prepare it, this memorandum contains 5200 words.