S.D.N.Y. – N.Y.C.
25-cv-2990
Ramos, J.

# United States Court of Appeals

FOR THE
SECOND CIRCUIT

_____

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20ᵗʰ day of June, two thousand twenty-five.

Present:

>    Michael H. Park,
>    William J. Nardini,
>         *Circuit Judges*,
>    Stefan R. Underhill,
>         *District Judge.*[*]

_____

State of New York, State of Arizona, State of California, State of Delaware, District of Columbia, State of Hawaii, State of Illinois, State of Maine, State of Maryland, Commonwealth of Massachusetts, People of the State of Michigan, State of Minnesota, State of Nevada, State of New Jersey, State of New Mexico, State of Oregon, Josh Shapiro, in his official capacity as Governor of the Commonwealth of Pennsylvania,

>         *Plaintiffs-Appellees*,

v.                                                      25-1424

United States Department of Education, Linda McMahon, in her official capacity as Secretary of Education,

>         *Defendants-Appellants*.

_____

[*] U.S. District Judge Stefan R. Underhill, of the United States District Court for the District of Connecticut, sitting by designation.

Defendants-Appellants United States Department of Education and Linda McMahon, in her official capacity as Secretary of Education (collectively, the "Government"), appeal from an order of the United States District Court for the Southern District of New York (Edgardo Ramos, *District Judge*), entered on June 3, 2025, preliminarily enjoining them from modifying the period during which the Plaintiffs-Appellees (the "States") may liquidate certain COVID-19 era grant funding. At a hearing held on that same date, the district court denied the Government's motion to stay the preliminary injunction pending appeal. On June 6, 2025, the Government sought such a stay from this Court. For the reasons below, we deny the Government's motion.

The States brought this action alleging that, after initially granting their requests for additional time to liquidate education-related grant funding, the Government abruptly rescinded those extensions on March 28, 2025. The States alleged that the rescissions were arbitrary and capricious, and contrary to law, and therefore violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. On May 6, 2025, the district court entered an order preliminarily enjoining the Government from implementing the March 28 rescissions or otherwise modifying the liquidation period without providing the States with fourteen days' notice. On May 11, 2025, the Government sent a letter to the States informing them that the liquidation period would end on May 25, 2025. On June 3, 2025, the district court entered an order preliminarily enjoining the Government from implementing the rescissions set forth in the May 11 letter or otherwise modifying the liquidation period without providing the States with thirty days' notice. This interlocutory appeal followed.

We begin by addressing the Government's assertion that the district court lacks jurisdiction over the States' claims. *See Merritt v. Shuttle, Inc.*, 187 F.3d 263, 268 (2d Cir. 1999). Relying on the Supreme Court's recent decision in *Department of Education v. California*, 604 U.S. ___, 145 S. Ct. 966, 968 (2025), the Government argues that the "APA's waiver of sovereign immunity applies only to claims against the United States seeking non-monetary relief, and does not apply if any other statute waives sovereign immunity over the suit or impliedly forbids the relief sought." Government's Mot. at 16–17. The Government contends that here, the States are seeking precisely such monetary relief, and the U.S. Court of Federal Claims provides the exclusive forum for this case because the Tucker Act grants that court jurisdiction "to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States," 28 U.S.C. § 1491(a)(1). We are not persuaded that the Supreme Court's brief discussion of the Tucker Act in *California* precludes the district court's exercise of jurisdiction over the States' claims in this case.

In *California*, the Court held that the district court likely did not have jurisdiction under the APA to order the Government to "pay[] . . . money" to fund certain education-related grants if it chose to order their reinstatement. 145 S. Ct. at 968. The Court, however, did not overrule its previous decision in *Bowen v. Massachusetts*, 487 U.S. 879 (1988). In *Bowen*, the Court held that the Tucker Act did not preclude a district court from exercising jurisdiction over claims involving the interaction between a state's "administration of its responsibilities under an approved Medicaid plan" and an agency's interpretation of applicable regulations, even if the district court's orders "[we]re construed in part as orders for the payment of money by the Federal Government to the

2

State." *Id.* at 905, 910. Citing *Bowen*, the Court explained in *California* that "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds," 145 S. Ct. at 968 (quoting *Bowen*, 487 U.S. at 910); rather, the Tucker Act bars district court orders that "enforce a *contractual* obligation to pay money," *id.* (emphasis added) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)).

Although the matter is not free from doubt, we find this case more analogous to *Bowen* than *California*. Whereas *California* concerned the outright termination of education-related grants, *see* 145 S. Ct. at 968, the States in this case challenge the Government's rescission of its prior regulatory action setting timelines for liquidating grants that the Government has not cancelled. In *California*, unlike the present case, "the terms and conditions of each individual grant award [were] at issue." *California v. U.S. Dep't of Educ.*, 132 F.4th 92, 96–97 (1st Cir. 2025). Here, the States assert that the Government "granted [them] extensions of time to access hundreds of millions of dollars in funds previously awarded to them," and then "abruptly and arbitrarily reversed course" and rescinded those extensions. Compl., Dist. Ct. Dkt. 1, ¶¶ 1–2. At their core, these allegations pertain to the Government's exercise of its *regulatory* authority to "approve extensions" of time for recipients to "liquidate . . . financial obligations incurred under [a] Federal award," 2 C.F.R. § 200.344(c), not a *contractual* duty to pay money to the States. Put another way, the States here do not point to any provisions of the underlying grants as giving rise to their claimed rights in this case. In fact, the States could not bring their claims under the Tucker Act because they do not allege a substantive, contract-based claim concerning the Government's rescission of the grant liquidation extensions. *See Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 409 (2d Cir. 2015) (holding that a claim that is "independent of any contract with the United States . . . does not fall within the scope of the Tucker Act"). Thus, as in *Bowen*, the States' claims do not seek enforcement of the Government's contractual obligations for purposes of the Tucker Act.

We acknowledge, however, that neither *California* nor *Bowen* is on all fours with this case. We do not doubt that the Supreme Court will soon provide further guidance on this difficult issue, which has divided the Circuits and, indeed, has divided this very panel of our Court. *Compare Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *1 (4th Cir. June 5, 2025), *with Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, 137 F.4th 932, 939 (9th Cir. 2025). But, until then, we are constrained to determine which precedent offers the nearest fit with the case before us. After careful consideration, we conclude that the closest analogue is *Bowen*. Accordingly, because we have determined that the Tucker Act does not preclude the district court from exercising jurisdiction over the States' claims,[1] we turn to the Government's other contentions as to why a stay of the district court's preliminary injunction is warranted.

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken*

---

[1] We are likewise unpersuaded by the Government's argument that its purported openness to "consider[ing] extension requests on a project-specific basis," Dist. Ct. Dkt. 84-1 at 5, renders its decision to modify the liquidation period a nonfinal agency action that is unreviewable under the APA. *See U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 598 (2016) (explaining that an agency's ability to revise a determination based on new information "is a common characteristic of agency action, and does not make an otherwise definitive decision nonfinal").

*v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). "It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Id.* (alteration adopted) (citation and internal quotation marks omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34. In deciding whether to grant a stay, we consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "The first two factors . . . are the most critical." *Id.* Applying these principles, we conclude that the Government has not borne its burden of demonstrating that a stay is justified in this case.

At the outset, the Government has not made a strong showing that it is likely to succeed on the merits of its appeal. "As a general rule we do not disturb a district court's grant of a preliminary injunction, absent an abuse of its discretion." *Fireman's Fund Ins. Co. v. Leslie & Elliott Co.*, 867 F.2d 150, 150–51 (2d Cir. 1989). Here, the Government argues that in granting the preliminary injunction, the district court incorrectly determined that the States had shown a likelihood of success on the merits of their claims. We are unpersuaded. Under the "change-in-position" doctrine, "agencies are free to change their existing policies as long as they provide a reasoned explanation for the change, display awareness that they are changing position, and consider serious reliance interests." *Food & Drug Admin. v. Wages & White Lion Invs., L.L.C.*, 604 U.S. ___, 145 S. Ct. 898, 917 (2025) (citation and internal quotation marks omitted). The record in this case supports the proposition that the Government's change in position with respect to the liquidation deadline failed to meet these requirements and was therefore arbitrary and capricious within the meaning of the APA.

First, although the Government previously granted extensions of the liquidation period on an individualized basis by State and program, its March 28 and May 11 letters purported to rescind *all* extensions for all states and programs at once, without any particularized assessment. The May 11 letter states that this blanket rescission was justified because the COVID-19 pandemic has been over for two years, because "the original extension letters included no explanation for the extensions," and because the States "have increasingly tapped [funds] in ways that are less and less connected to direct academic services to students and the ongoing educational harms caused by COVID." Dist. Ct. Dkt. 84-1 at 3–4. But the Government previously conceded that "it was implicit that the[] funds would continue to be available after the [COVID] emergency," Dist. Ct. Dkt. 84-2 at 33, and that it had "no reason to believe" that the original extension requests were not carefully considered, *id.* at 27. The Government further conceded that it has already approved, at least in general terms, the projects for which the States plan to use the funds, *id.* at 25, and it does not suggest that those approvals were improperly granted. Accordingly, the record suggests that the Government did not provide a reasoned explanation for its change in position.

The record also suggests that the Government did not meaningfully consider the reliance interests at stake. The record contains several declarations of state and local education officials

4

discussing the States' reliance on the original extensions, as well as the likely consequences of rescinding those extensions. Such consequences include disruptions to student services, Dist. Ct. Dkt. 14 at 6–7, employee layoffs, Dist. Ct. Dkt. 12 at 6–7, and delays in ongoing renovation projects, Dist. Ct. Dkt. 20 at 5–7. *See generally* Dist. Ct. Dkt. 21. One declaration states, for example, that at least $5 million in grant funding for the Baltimore City Public Schools has been allocated to construction renovation projects that have already commenced, and that "[h]alting a construction project that is in progress would significantly disrupt school operations," including by potentially restricting access to restrooms and school health suites. Dist. Ct. Dkt. 20 at 5–7. Nonetheless, the Government's May 11 letter categorically states that "no valid reliance interests exist," and that, to the extent the States have reliance interests, they "now have 14 days to liquidate expenses as they wind down their [grant]-funded programs." Dist. Ct. Dkt. 84-1 at 5. Given the types of projects the States initiated with grant funding, including projects involving longer-term construction contracts, *see* Dist. Ct. Dkt. 20 at 5, it seems implausible that the States would be able to liquidate all funds in just fourteen days. Thus, the record suggests that the Government did not seriously consider the States' reliance interests before rescinding the original extensions.

Next, the Government has not shown that it will be irreparably harmed in the absence of a stay. Unless there is "evidence of damage that cannot be rectified by financial compensation," "[m]onetary loss alone will generally not amount to irreparable harm." *Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 934 F.2d 30, 34 (2d Cir. 1991) (citation and internal quotation marks omitted). Here, the Government has not represented that it will be unable to fund other programs if it does not have access to the funds at issue in this litigation while this appeal is pending. Nor does the Government offer any evidentiary support for its assertion that it will be unable to recover disbursed funds if it prevails in this litigation. To the contrary, the Government conceded at oral argument that the district court could order the States to return improperly disbursed funds, and that there is no reason to believe that the States would not repay those funds if ordered to do so. Oral Arg. Rec. at 8:01–8:11. Thus, unlike in *California*, there has been no unrefuted representation that the Government will be "unlikely to recover the grant funds once they are disbursed," 145 S. Ct. at 968–69. Moreover, although the Government maintains that it is "typically . . . very difficult to recover [grant funds] from states," Oral Arg. Rec. at 6:08–6:17, the mere fact that recovering funds *might* be difficult does not come close to rendering a loss irreparable, *see Nken*, 556 U.S. at 434–35 (stating that "some possibility of irreparable injury" is insufficient (citation and internal quotation marks omitted)).

The States, on the other hand, have shown that they will be substantially injured by a stay. As discussed, the States have presented declarations indicating that permitting rescission of the original extensions would, in the near term, significantly disrupt the provision of student services and other school operations, cause layoffs, and delay ongoing construction projects. Indeed, the record indicates that some of these effects have already occurred. *See* Dist. Ct. Dkt. 14 at 6. Given the nature of these consequences, collecting funds at the end of this litigation would not undo these disruptions and therefore would not suffice to make the States whole.

Finally, given the detrimental effects a stay would have on the States and their school systems, and given the Government's failure to show irreparable harm, the public interest weighs

5

against granting a stay.

      We conclude by pointing out the obvious: This is a ruling on an emergency stay motion. The Court has been obliged to consider the parties' arguments on a short time frame, and against the background of the Supreme Court's developing case law.  The Government's appeal will proceed in due course for a full merits consideration before a three-judge panel, which will not be bound by this panel's necessarily preliminary assessment of the issues discussed in this order. The parties are free to move for expedited briefing and consideration of the merits.

      For these reasons, it is hereby ORDERED that the Government's motion for an immediate stay of the district court's June 3, 2025, preliminary injunction is DENIED.   Judge Park dissents from the denial of the motion for a stay pending appeal.

                FOR THE COURT:
                Catherine O'Hagan Wolfe, Clerk of Court