Park, *Circuit Judge*, dissenting:

I would grant the Government's request for a stay pending appeal.

First, the Government seems likely to succeed in showing that the district court lacked jurisdiction. As the Supreme Court stated just three months ago, "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (quoting 28 U.S.C. § 1491(a)(1)). Although the States styled their challenge as an APA suit, "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered here." *Id.* at 968 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). It is difficult to see why the Tucker Act would likely apply to a suit about the statutorily authorized education grants at issue in *California*, but not to similar grants here. The district court's preliminary injunction bars the Government from "attempting to modify" its own previously approved periods for States to liquidate Education Stabilization Funds ("ESF")—*i.e.*, the period of performance—and directs the Government to "process Plaintiffs' outstanding and future requests for liquidation of ESF without delay"—*i.e.*, an obligation to pay money. Dist. Ct. Dkt. 106, at 2. Instead of cancelling grants outright as in *California*, the Government here rescinded a previous extension of the period of performance. So this suit, like the one in *California*, is "at its essence a contract action," *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 375 (2d Cir. 1999) (quotation marks omitted), and thus subject to the Tucker Act.[1]

Second, the Government also seems likely to succeed in defeating the States' APA claims. The Government's May 11, 2025 Letter acknowledged its change of position. *See* May 11 Ltr. at 3. It also offered a reasoned explanation for rescinding the previous "effectively blanket extensions." *See id.* at 2-3 (explaining that recipients were using ESF for projects that "Congress did not intend," that ending the extensions would allow the Government to put the money "to better uses than simply serving as a slush fund for state educational spending unrelated either to COVID mitigation or even direct academic services to students," and that the original extensions may have been granted without adequate verification). Finally, the Government considered "any reliance interests that grant recipients may possess in the extensions." *Id.* at 4. The Letter explained that the Government accounted for such interests by allowing recipients "14 days to liquidate expenses as they wind down their ESF-funded programs." *Id.* To the extent that 14 days is not enough time to wind down some projects, the Government "will consider extension requests on a project-specific basis." *Id.* In my view, this seems sufficient to survive arbitrary-and-capricious review. *See DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 33 (2020) (agencies must "assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns").

---

[1] Other circuits have similarly understood *California* to distinguish *Bowen v. Massachusetts*, 487 U.S. 879 (1988), when a court orders the Government to perform on a grant obligation. *See, e.g.*, *Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *2 (4th Cir. June 5, 2025); *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *4 (D.C. Cir. May 3, 2025).

CERTIFIED COPY ISSUED ON 06/20/2025

Finally, the Government is likely to suffer irreparable harm if the States continue to liquidate funds. ESF recipients sought over $200 million in reimbursements in the hours after the district court's initial injunction. As a practical matter, the Government is unlikely to recover those funds if it prevails on the merits, and in the meantime, it is restrained from directing hundreds of millions of dollars to worthier causes. By contrast, if the States prevail on the merits, they could seek reimbursement or pursue Tucker Act claims in the Court of Federal Claims. They could also apply for project-specific extensions right now. Moreover, the public has a strong interest in seeing that education funds are spent as Congress intended. I respectfully dissent.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

*Catherine O'Hagan Wolfe* [signature]